UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

VERONICA MADDY, *on behalf of herself and all others similarly situated*,

                         Plaintiff,

                  -v-

LIFE TIME, INC.,

                         Defendant.

-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/5/2023

22-cv-5007 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendant Life Time Inc. ("Defendant" or "Life Time") moves, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the complaint filed by plaintiff Veronica Maddy ("Plaintiff" or "Maddy") for lack of standing or, in the alternative, to take limited jurisdictional discovery. Dkt. Nos. 12, 20.

For the following reasons, the motion to dismiss is denied, but the request to take limited jurisdictional discovery is granted.

## BACKGROUND

The following facts are drawn from the Plaintiff's first amended complaint. Dkt. No. 11 ("FAC").

Plaintiff is a visually impaired and legally blind person, who uses screen-reading software to read website content using her computer. *Id.* ¶ 2. Plaintiff lives in the Bronx. *Id.* ¶ 11. Defendant Life Time is a Minnesota corporation that operates brick and mortar retail locations including in New York county. *Id.* ¶ 16. Life Time also operates a public website at the domain "Lifetime.Life," which provides consumers with access to an array of goods and

services such as joining its health centers and purchasing health and beauty products. *Id.* ¶¶ 17, 25. On numerous occasions, the last of which was in October 2022, Plaintiff attempted to make a purchase of body oil on Defendant's website and was unable to do so due to access barriers on the website. *Id.* ¶ 36. The website "contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software." *Id.* ¶ 29. These barriers include "lack of alt-text on graphics, inaccessible drop-down menus, inaccurate navigation links, the lack of adequate prompting and labeling, the denial of keyboard access for some interactive elements, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse." *Id.* The lack of "alt-text," or alternative text, "prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user)," resulting in Plaintiff and other blind customers being "unable to determine what is on the website, browse the website or investigate and/or make purchases." *Id.* ¶ 30. The website "lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms." *Id.* ¶ 31. Plaintiff "encountered . . . specific accessibility issues unique" to the website, including landmarks not being properly inserted into the home page so that "Plaintiff could not move screen reader software focus directly to 'content info' region of the page using landmarks" and "repetitive ambiguous link texts," which lacked context and "disoriented Plaintiff." *Id.* ¶ 32.

Plaintiff states that she "intends on visiting the Website immediately" to purchase body oil if it were made accessible. *Id.* ¶ 37. Plaintiff has a hobby of collecting body lotions and oils from various brands and enjoys purchasing different branded lotions to add to her collection, and the website offers the Morroccanoil Dry Body Oil, which is a high quality body lotion that

Plaintiff wants to add to her collection. *Id.* ¶¶ 15, 37. Plaintiff also alleges that she intends on visiting the Website immediately if it were made accessible to her in order to become a member of Life Time's health centers. *Id.* ¶ 38.

## PROCEDURAL HISTORY

Plaintiff filed the initial complaint on June 15, 2022. Dkt. No. 1. Plaintiff then filed the FAC in this Court on October 14, 2022 on behalf of herself and those similarly situated. FAC. Plaintiff's first cause of action alleges violations of the Americans with Disabilities Act ("ADA"), for denying full and equal access to the website to those who are blind. *Id.* ¶¶ 53–68. Plaintiff's second, third, and fourth claims allege Defendant is in violation of the New York State Human Rights Law ("NYSHRL"), the New York State Civil Rights Law ("NYSCRL"), and the New York City Human Rights Laws ("NYCHRL"). *Id.* ¶¶ 69–108. Plaintiff's fifth cause of action seeks declaratory relief under the ADA, NYSHRL, and NYCHRL. *Id.* ¶¶ 109–11. Plaintiff seeks a preliminary and permanent injunction, declaratory relief, compensatory damages, and reasonable attorneys' fees, expenses, and costs. *Id.* at ECF pp. 27–28.

Defendant filed its motion to dismiss the FAC on November 14, 2022. Dkt. No. 12. In support of the motion to dismiss, Defendant filed a memorandum of law and declarations. Dkt. Nos. 14–15. Plaintiff filed a memorandum in opposition on December 28, 2022. Dkt. No. 19. Defendant filed a reply memorandum in further support of the motion on January 20, 2023 as well as a supporting declaration. Dkt. Nos. 20–21.

## LEGAL STANDARD

A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015). To survive a 12(b)(1) motion to dismiss for lack of standing, a plaintiff "must allege facts that

3

affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'" *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)). Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party. *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001). However, where the jurisdictional challenge is fact-based, the defendant may "proffer[ ] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). In that case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno*, 932 F. Supp. at 95.

"[I]f a plaintiff's Article III standing is 'in issue' at the pleading stage, a Court may allow 'limited discovery on the jurisdictional issue . . . .'" *Tavarez v. Moo Organic Chocolates, LLC*, 2022 WL 17094631, at *3 (S.D.N.Y. Nov. 21, 2022) (quoting *Stepniak v. United Materials*, 305 F. App'x 789, 790 (2d Cir. 2009)); *see Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 72 (2d

4

Cir. 2011) ("If the district court continues to doubt whether Harty's professed intent to return to the Nanuet Mall was genuine, this doubt should be resolved by the court before proceeding further."); *see Alliance for Env't. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) ("[A] district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits.").

## DISCUSSION

"Under Article III of the Constitution, the jurisdiction of federal courts is limited to the resolution of 'cases' and 'controversies.'" *Amidax*, 671 F.3d at 145 (quoting U.S. Const. art. III, § 2). "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as the 'proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (alteration in original) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). This is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006).

"For a plaintiff to have Article III standing, he must establish three things: (1) that he has an injury in fact; (2) that there is a causal connection between his injury and the conduct complained of; and (3) that his injury will be redressed by a favorable judicial decision." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022). "Moreover, a plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm." *Harty*, 428 F. App'x at 71. Therefore, in an ADA suit seeking injunctive relief based on lack of adequate access to a public accommodation, "[the Second Circuit has] previously found standing . . . where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue;" and (3) it

5

was reasonable to infer that he or she intends to return to the public accommodation. *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013); *see Guglielmo v. Neb. Furniture Mart, Inc.*, 2020 WL 7480619, at *8 (S.D.N.Y. Dec. 18, 2020) (citing *Harty v. Greenwich Hosp. Grp., LLC*, 536 F. App'x 154, 154-55 (2d Cir. 2013)). "In the virtual world, the third requirement can be met by non-conclusory, plausible factual allegations from which it is reasonable to infer, based on the past frequency of visits and the plaintiff's articulated interest in the products or services available on the particular website, that the plaintiff intends to return to the website." *Zinnamon v. Satya Jewelry II, LLC*, 2023 WL 3511123, at *2 (S.D.N.Y. Apr. 28, 2023).

      Defendant moves to dismiss the FAC for lack of standing on various bases. Defendant argues that the allegations in the FAC that Plaintiff intends to return to Defendant's website are not plausible in light of the original complaint she filed and the various other complaints that Plaintiff has filed for ADA violations in this District. Dkt. No. 13 at 13. Defendant argues that "Plaintiffs' new allegations with respect to her 'immediate' intent to use Life Time's Website are an inconsistent nearly-wholesale boilerplate shift from her prior allegations" and "cannot be credited." *Id*. at 14. Defendant also argues that even if the allegations in the FAC are believable, Plaintiff has not pleaded enough to plausibly show that she intends to immediately return to the website to complete her required purchase as soon as possible. *Id*. at 16. Defendant notes that Plaintiff does not plead that she visited the website on a regular basis, offer any details concerning her visits to the website, or explain why she wants to join the Life Time club, particularly as there are no athletic clubs operated by Life Time in the county in which she lives. *Id.* at 16.

In response, Plaintiff claims that her frequent filing of ADA lawsuits is not evidence of abuse of the legal system, but instead "demonstrates the systemic and rampant discrimination faced by Plaintiff and other visually impaired consumers on a daily basis when using the internet, which goes directly to the very issue the ADA was meant to address." Dkt. No. 19 at 7–8. Plaintiff further argues: "The fact that Plaintiff's allegations have been amended to provide further detail does not render the allegations in the Amended Complaint as any less credible." *Id.* at 14. Plaintiff also argues that she has pleaded enough to support standing. *Id.* at 12–13. Plaintiff also claims that Defendant's motion to dismiss is not a factual challenge to standing, but instead a facial challenge to standing based on the allegations in the complaint and therefore Defendant may not proffer evidence beyond the pleadings in support of it. *Id*. at 9–10.

To start, the Court disagrees with Plaintiff that Defendant brings purely a facial challenge to standing and therefore cannot rely on evidence outside of the record in challenging it. Defendant's challenge to standing is both facial and factual. Defendant argues *both* that the allegations in the Complaint are insufficient to establish the existence of standing, *and* that certain extrinsic evidence reveals the existence of factual problems in the assertion of jurisdiction. *See* Dkt. No. 13 at 6–16. In support of its factual challenge, Defendant submits a declaration from Ryan Jurek, the Direct of Websites and Digital Analytics at Life Time, providing, among other things, that Life Time "does not operate any clubs in the Bronx, where Plaintiff lives," Dkt. No. 14 ¶ 8, as well as a declaration from Robert Salazar, Senior Director of Location Intelligence in Property Development at Life Time, Dkt. No. 21. Defendant also submits a declaration from its counsel attaching prior complaints that Plaintiff has filed in other matters.[1] Dkt. No. 15. Defendant argues that this evidence undermines Plaintiff's factual

---

[1] Prior courts have looked to a plaintiff's filing of other similar complaints in evaluating

7

allegations of standing, specifically that she actually intends to return to the website to make a purchase or join a Life Time club.  *See* Dkt. No. 13 at 6–16.  In fact, Plaintiff, seemingly recognizing that Defendant's declaration challenges the factual allegations in the Complaint, has submitted an affidavit bolstering certain of the factual allegations that Defendant's declarations attempt to undermine.  Dkt. No. 19-1.  The Court therefore rejects Plaintiff's attempt to have this Court ignore the extrinsic evidence submitted by the parties in ruling on this motion.[2]

The Court will next turn to Defendant's substantive arguments for dismissing the FAC.

First, Defendant claims that the Court should dismiss the case for lack of standing because the allegations in the FAC are not sufficient to plead standing.  The allegations, on their own, are sufficient to plead standing.  As previously stated, "[t]here is standing '[i]n the ADA context' if '(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer []' that the plaintiff would continue to access the public accommodation."  *Angeles v. Grace Prod., Inc.*, 2021 WL 4340427, at *1 (S.D.N.Y. Sept. 23, 2021) (Nathan, J.) (quoting *Kreisler*, 731 F.3d at 187–88).  The FAC pleads each of these three requirements.

As to the first requirement, Plaintiff pleads that she made "numerous attempts to complete a purchase" on the website, such as a purchase of body oil, most recently on October

---

standing.  *See Velazquez v. Everlast Worldwide, Inc.*, 2022 WL 16745767, at *1 (S.D.N.Y. Nov. 7, 2022).

[2] Even if Plaintiff were correct and the evidence that Defendant sets forth did not "challenge the factual basis for standing," Plaintiff would not be prejudiced by this Court looking to the extrinsic evidence that Defendant submits.  If the evidence submitted by Defendant is "immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," then "[P]laintiff [is] entitled to rely on the allegations in the [p]leading."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).  It is only "[i]f the extrinsic evidence presented by the defendant is material and controverted, [that] the district court will need to make findings of fact in aid of its decision as to standing."  *Id.*

13, 2022, but was unable to complete the purchases because of "the many access barriers" on the website.  FAC ¶ 36.  Plaintiff also alleges that the inaccessibility of Defendant's website "has deterred Plaintiff from making an online purchase of body oil and from becoming a member of Defendant's health centers" and describes in significant detail the nature of the barriers on the website and how her injury is traceable to them.  *Id.* ¶¶ 17, 32.  "[I]f accurate, these allegations are specific enough to establish past injury."  *Tavarez*, 2022 WL 17094631, at *3 (finding the first requirement of standing sufficiently pleaded where "Plaintiff alleges that he visited Defendant's website on three past occasions and 'attempted to transact business' but was unable to do so because of at least three accessibility barriers on Defendant's website"); *see also Sanchez v. NutCo, Inc.*, 2022 WL 846896, at *2 (S.D.N.Y. Mar. 22, 2022) (finding that the plaintiff sufficiently pleaded past injury where he claims he was unable to purchase product due to barriers on website); *see also John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) ("We have repeatedly described [the injury-in-fact] requirement as a low threshold." (internal quotation marks omitted)).

As to the second requirement, it is reasonable to infer that Plaintiff's alleged discriminatory treatment would continue as Plaintiff has alleged ongoing accessibility barriers.  She claims to have visited the website on numerous occasions, including the day before filing the FAC, and to have been unable to make a purchase due to access barriers on the website.  FAC ¶ 36; *see also Tavarez*, 2022 WL 17094631, at *4 ("[I]t is reasonable to infer that this discriminatory treatment will continue because Plaintiff has visited Defendant's website on three occasions, and its accessibility barriers have not been addressed as of September 8, 2022."); *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, at *10 (S.D.N.Y. Dec. 4, 2019) (allegations that plaintiff "visited the Website on multiple occasions and has not been able to access its

content" "supports an inference that the Website has not been altered to fix the barriers Plaintiff encountered, and that he will continue to be unable to access the Website").

Plaintiff has also alleged enough concerning the third requirement—*i.e.*, intent to return to the website once it has become accessible. Plaintiff's allegations of intent to return are more detailed than the plaintiffs' allegations in *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68 (2d Cir. 2022). In that case, the Circuit consolidated five lawsuits "in which visually impaired plaintiffs sued defendant stores under the [ADA] for failing to carry braille gift cards." *Id.* at 71. The plaintiffs alleged in a conclusory fashion that they intended to immediately purchase gift cards from defendants as soon as they were made accessible but failed to provide even basic information about their past visits to defendants' stores or any information as to why they wanted to urgently purchase gift cards from the defendants' stores in the future. *Id.* at 77. In the FAC, by contrast, Plaintiff provides information about her past visit to Defendant's website and why she wants to visit it once it becomes available. She alleges that she has a hobby of collecting body lotions and oils from various brands and enjoys purchasing different branded lotions to add to her collection, and the website offers a specific oil, the Morroccanoil Dry Body Oil, which is a high quality body lotion that Plaintiff wants to add to her collection.[3] FAC ¶¶ 15, 37, 38. The product is a consumer product that would be appealing to those who are visually impaired as well as those who are not. There is nothing in the nature of the product that would make it implausible that Plaintiff would have an interest in it. Courts have found similar allegations sufficient to allege standing in other cases. *See Tavarez*, 2022 WL 17094631, at *4 (concluding

---

[3] The conclusory allegations in the FAC concerning Plaintiff's interest in joining one of Life Time's health clubs are not, on their own, sufficient to allege an intent to return. Plaintiff does not provide any details concerning these allegations in the FAC, including why she wants to join this health club in particular or even why she wants to join a health club generally.

that allegations of prior times "Plaintiff accessed Defendant's website, the specific product Plaintiff allegedly seeks to buy, his habit of consuming chocolate, and characteristics of Defendant's Almond Mini Bars that he finds attractive" sufficient to establish intent to return); *Walters v. Fischer Skis U.S., LLC*, 2022 WL 3226352, at *4 (N.D.N.Y. Aug. 10, 2022) ("It is reasonable to infer, based upon Plaintiff's history as a skier and his interest in the sport, that he will plan another ski trip and will return to the site to purchase new equipment.").

Because Plaintiff has sufficiently pleaded each of these three requirements, the Court will not dismiss the FAC on the face of the complaint alone.

Second, the Court disagrees with Defendant that because Plaintiff has previously filed over seventy similar lawsuits, Plaintiff's claims of standing are necessarily implausible. It is not uncommon for people to use and attempt to access multiple websites a day—whether looking for information or to buy something. And, it is not implausible that many such websites have issues that make them inaccessible to visually impaired persons. Thus, the fact that Plaintiff has filed many similar lawsuits to this one may, as Plaintiff argues, reflect the systematic issues that visually impaired consumers face on a daily basis and does not compel the conclusion that Plaintiff invented her allegations of standing. "There is nothing inherently wrong with filing duplicative lawsuits against multiple defendants if the harms to be remedied do exist and are indeed identical." *Matzura v. Red Lobster Hosp. LLC*, 2020 WL 3640075, at *4 (S.D.N.Y. July 6, 2020); *see also Delacruz v. Ruby Tuesday, Inc.*, 2020 WL 5440576, at *3 (S.D.N.Y. Sept. 8, 2020) (same).

This conclusion is not contrary to the Second Circuit's decision in *Calcano*. As discussed, in that case, the court largely based its conclusion that plaintiffs lacked standing on the "conclusory" allegations in the complaints. 36 F.4th at 75. The court also noted that it could

11

not "ignore the broader context of Plaintiffs' transparent cut-and-paste and fill-in-the-blank pleadings" and stated that "[t]he four Plaintiffs before [the court] filed eighty-one of over 200 essentially carbon-copy complaints between October and December 2019." *Id.* at 77. The court further stated that such "Mad-Libs-style complaints" "confirm[ed] the implausibility of their claims." *Id.* However, the Circuit reached that conclusion not only because the plaintiffs in that case—Marcos Calcano, Yovanny Dominguez, Braulio Thorne, and James Murphy—had filed numerous similar lawsuits, but also because the allegations in plaintiffs' complaints across the five lawsuits were replete with "errors, oddities, and omissions." *Id.* The Circuit stated:

> Murphy asserts that he would return to a Kohl's that doesn't exist. Dominguez seeks to go back to Banana Republic for its food. Thorne doesn't even allege where he lives, making an assessment of proximity to a Jersey Mike's impossible. Calcano plans to travel from somewhere in the Bronx to Columbus Circle for a shaving supply gift card.

*Id.* In other words, the plaintiffs' allegations of standing were conclusory and there was evidence not only that the plaintiffs were filing many similar lawsuits, but also that the allegations of standing in the complaints at issue were highly suspect for some reason or another.

Here, however, Plaintiff has not made conclusory allegations of standing. She specifies not only the product she wishes to purchase—body oil—but she also alleges facts that make it plausible that she wishes to purchase the product from Defendant. *See Guerrero v. Ogawa USA Inc.*, 2023 WL 4187561, at *3 (S.D.N.Y. June 26, 2023) (plaintiff had shown intent to return where the "verified FAC states Guerrero wants to purchase a unique, differentiated and highly valuable Ogawa product and has tried to do so on three specific dates.") Plaintiff has a hobby of collecting body lotions and oils from various brands and enjoys purchasing different branded lotions to add to her collection, and the website offers the Morroccanoil Dry Body Oil, which is a high quality body lotion that Plaintiff wants to add to her collection. FAC ¶¶ 15, 37. Moreover, Defendant has not identified a line of complaints filed by Plaintiff that are filled with "errors,

12

oddities, and omissions" concerning standing. *Calcano*, 36 F.4th at 77. Instead, Defendant points out that Plaintiff has filed other complaints using similar turns of phrase and wording, Dkt. No. 13 at 12–13—a fact that is wholly unsurprising as those complaints assert not only similar injuries but also causes of action.

Third, Defendant argues that Plaintiff's allegations of standing in the FAC are inherently implausible in light of Plaintiff's original complaint filed in the action. Specifically, Defendant notes that the original complaint stated that Plaintiff attempted to use the website to "make an online purchase of body oil," Dkt. No. 1 ¶ 36, whereas the FAC specifies that Plaintiff specifically requests to buy from the website "Morroccanoil Dry Body Oil," FAC ¶ 37. In addition, while the original complaint alleged that Plaintiff intended to re-visit the website in "the future in order to make additional potential purchases of nutritional supplements and other products from Lifetime.life," Dkt. No. 1 ¶ 37, the FAC alleges that Plaintiff intends to visit the website immediately in order to purchase body oil from Defendant and to become a member of Life Time's health centers, FAC ¶¶ 37–38. And, whereas the original complaint alleged that "Plaintiff enjoys the various selections of multivitamin and nutritional bundles, healthy snacks, protein and meal replacements, and would like to order products to be shipped directly to her home from Defendant's website," Dkt. No. 1 ¶ 37, the FAC, for the first time, alleges that she "enjoys collecting body lotions and oils from various brands," FAC ¶ 37.[4]

---

[4] Defendant argues that in other cases Plaintiff has updated her pleadings in response to a motion to dismiss or potential motion to dismiss on standing, initially "vaguely" describing her desire to purchase products and then amending her complaint to provide more detail about her desire for a specific product. This is not suspect. Unlike the allegations, here, where certain facts in the original complaint have somewhat morphed in response to Defendant's threatened motion to dismiss, updating a complaint to more specifically plead standing in response to a motion to dismiss under Rule 12(b)(1) is reasonable and, in fact, advisable.

This argument has some force.  The allegations in the original complaint that Plaintiff intends to visit the website in order to purchase nutritional supplements and other products from the website are distinct from the allegations in the FAC that she wants to visit the website *immediately* to purchase body oil and become a member of Life Time's health centers.  Plaintiff's allegation in the original complaint that her interest in the website stemmed from her interest in multivitamins and health snacks and her failure to mention her passion for collecting body lotions and oils provide some evidentiary (but not conclusive) support for the proposition that, at least at the time of the filing of the original complaint, she had no interest in purchasing body lotions and oils from Defendant and that her new-found interest in such products stems from litigation exigencies and not from genuine desire.  *See Xie v. JPMorgan Chase Short-Term Disability Plan*, 2016 WL 3963113, at *3 (S.D.N.Y. July 20, 2016) ("'[A] statement in a withdrawn complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission,' and any contradictions with prior pleadings can be used only in attacking a witness's credibility." (citation omitted)).

Yet, while the differences between the original complaint and the FAC do inform the Court's ultimate decision to permit limited jurisdictional discovery (discussed *infra* pp. 17–18), they do not, on their own, require dismissal of the FAC for lack of standing at this stage.  The allegations in the original complaint—although different than the FAC—are not inconsistent with the FAC and it is possible to read portions of the FAC as merely adding further detail to the allegations in the original complaint rather than completely changing those allegations.  A plaintiff, confronted with challenges to the sufficiency of its allegations, may—consistent with Federal Rule of Civil Procedure 15—amend those allegations to provide more or different allegations.  In that instance, the plaintiff is not bound by her original pleading.  The amended

pleading replaces the original complaint. *See Vasquez v. Reilly*, 2017 WL 946306, at *3 (S.D.N.Y. Mar. 9, 2017) ("Where, however, an amended pleading is not in 'direct' contradiction with the original pleading, courts apply the general rule recognizing that an amended pleading completely replaces the original pleading."). That is the case here. For example, the original complaint stated that Plaintiff intended to visit the website to make purchases of "nutritional supplements *and other products*." Dkt. No. 1 ¶ 37 (emphasis added). It is possible that the specific reference to Morroccanoil Dry Body Oil in the FAC is the *other product* that the original complaint referred to or that, after that original complaint was filed, Plaintiff formed another more pressing interest in buying something on Defendant's website other than nutritional supplements. If this is true, there is nothing suspect about Plaintiff updating her original complaint to provide this additional information/detail. The purpose of giving a plaintiff the chance to amend her complaint is so she has the opportunity to do precisely that. *See Ezeiruaku v. Am. Express Co.*, 2020 WL 6292477, at *3 (S.D.N.Y. Oct. 27, 2020) ("The Court will permit Plaintiff an opportunity to file an amended complaint that includes additional allegations and details to support his claims, in accordance with this opinion."). The Court therefore will not dismiss the case at this stage for lack of standing based merely on the differences between the original complaint and the FAC.

Finally, Defendant claims that the factual allegations of standing are undermined by certain evidence it submits. Defendant has submitted extrinsic evidence undercutting certain of these allegations, particularly concerning Plaintiff's allegations that she intends to return to the website, and Plaintiff in return has submitted evidence attempting to strength them. In support of its opening motion, Defendant submitted a declaration from its Director of Websites and Digital Analytics, which states that Defendant does not operate any clubs in the Bronx, where Plaintiff

15

lives. Dkt. No. 14 ¶ 8. Plaintiff, in response, submitted a declaration stating her interest in body oils and lotions comes from "wide-spread use of body oils and lotions in my country origin, Ghana" and she states that she often buys products in the United States to send to her family in Ghana. Dkt. No. 19-1 ¶¶ 7–8. She also attests that she was a member of Planet Fitness gym during the year 2021, but is interested in joining a different gym with more robust options and nicer facilities. *Id.* ¶¶ 10. Accordingly, she states that she is interested in joining a Life Time health center, learned that one such center is opening on 57th street in Manhattan, which is only a forty-minute trip from her home, and is willing to take the forty-forty minute trip as she understands that Life Time "offers a very refined experience with many amenities that I am unable to find elsewhere nearer to where I live, such as lap and leisure pools and a sauna." *Id.* ¶¶ 12–13. She also states that she would like to become a member as soon as the website becomes available; the FAC alleges technical limitations on the site prevented Plaintiff from determining how to become a member of the Life Time health clubs. FAC ¶ 6. She further notes that the travel is not daunting to her as she uses New York City public transportation daily. Dkt. No. 19-1 ¶¶ 14–15.

In further response, attached to its reply brief, Defendant submitted a declaration from the Senior Director of Location Intelligence in Property Development at Defendant Life Time, Inc., attempting to rebut these additional facts. Specifically, the Senior Director attests that Life Time members in Manhattan "will typically not commute more than a few blocks . . . to the club from their workplace or home" and only a "fraction of one percent of all access memberships at Life Time's four Manhattan clubs live in the Bronx." Dkt. No. 21 ¶ 9. The Senior Director further attests that he found "at least ten (10) health clubs with pool and/or saunas that are located in, or geographically closer to, the Bronx than is Life Time's Midtown club." *Id.* ¶ 10. Defendant also

16

notes in its reply brief that a "Google search of 'Moroccanoil Dry Body Oil' returns over fifty retailers offering the identical product before Life Time even appears in the search (including, among others, Amazon, Planet Beauty, Sephora, Nordstrom, Kohls, and Blue Mercury)" and "[e]ach of these retailers offer the same product for the same price, except some of these retailers (unlike Life Time) offer free shipping."[5]  Dkt. No. 20 at 8.

The factual evidence presented by Defendant raises substantial questions about Plaintiff's standing in this case.  The sincerity of Plaintiff's intent to join Defendant's club in Midtown, if the barriers on the website no longer existed, is cast into question by the significant distance between her house and the club as well as the fact that other clubs offering similar high end amenities apparently exist much closer to her home.  It also is not apparent why—if Moroccanoil Dry Body Oil is a product available on various different websites—Plaintiff wants to buy the product on this website as opposed to another.  On the other hand, much of the factual evidence presented by Defendant rebutting Plaintiff's factual allegations of standing was first presented as part of Defendant's reply brief and therefore Plaintiff has not had the opportunity to respond to it.  The Court will not prejudge the issue.  In addition, Plaintiff herself has certified "under penalty of perjury" that she wants to join Defendant's club in Midtown, has a special cultural relationship with body oils and lotions, and has a hobby of purchasing, collecting and using them.  Dkt. No. 19-1.

---

[5] Defendant notes that more than four months before Plaintiff submitted her declaration, Life Time opened a preview gallery on 57th Street, which is a physical location where prospective members can get assistance in purchasing a Midtown club membership. Dkt. No. 20 at 5. Defendant implies that because Plaintiff did not visit the preview gallery or sign up for a membership after it opened, she must not have really been interested in having a Life Time membership. *Id.*  The Court disagrees.  If it is true that Plaintiff could not access Life Time's website due to barriers, Plaintiff also may not have known of the preview gallery.  Plaintiff did not allege that she would sign up as soon as the club opened, but instead that she would sign up as soon as the club opened *and* she could access the website to learn more about it.

Because there are significant reasons to question Plaintiff's standing, the Court will grant Defendant's request for limited discovery into standing. After discovery has been completed and if that discovery calls into question Plaintiff's standing, Defendant may make an appropriate motion. *See Tavarez*, 2022 WL 17094631, at *5 (ordering defendant to take jurisdictional discovery where court is "skeptical of the accuracy of the critical factual allegations" underlying standing).

## CONCLUSION

The motion to dismiss is DENIED. The motion for limited jurisdictional discovery is GRANTED. Defendant shall have until August 29, 2023 to conduct jurisdictional discovery. All remaining discovery shall be stayed pending further order of the Court. The parties shall submit a letter to the Court on or before August 29, 2023, indicating whether the stay of discovery should be lifted.

The Clerk of Court is respectfully directed to close Dkt. No. 12.

SO ORDERED.

Dated: July 5, 2023
New York, New York

_____
LEWIS J. LIMAN
United States District Judge